**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**JACKSON DIVISION**

**MARY SCOTT, Individually, as Executrix for the**
**Estate of MATTIE MOORE, and on Behalf of the**                    **PLAINTIFF**
**Wrongful Death Beneficiaries of MATTIE MOORE**

**v.**                                                          **NO. 3:12-CV-358-CWR-FKB**

**MANHATTAN NURSING & REHABILITATION**
**CENTER, LLC; MANHATTAN NURSING &**
**REHABILITATION CENTER; AURORA**                               **DEFENDANTS**
**HEALTHCARE, LLC; AURORA CARES, LLC;**
**Robert Forbes, M.D.; Corporations A-G; Jane Does**
**A-G; and John Does A-G**

**ORDER**

Before the Court is the Defendant's motion for summary judgment, Docket No. 31. The

Plaintiff filed a response, to which the Defendant has submitted a rebuttal. The matter is ready

for review. After considering the arguments and applicable authorities, the motion for summary

judgment will be granted.

**I.   Factual and Procedural History**

Plaintiff, Mary Scott, filed a negligence action in the Circuit Court of Hinds County

against Manhattan Nursing & Rehabilitation Center, LLC ("Manhattan") and other defendants.

Docket No. 1, at 1. Defendants removed the matter to this Court after Plaintiff voluntarily

dismissed Dr. Robert Forbes, the only non-diverse defendant. *Id.* at 2. After the case was

removed, Plaintiff agreed to dismiss defendants Aurora Healthcare, LLC, Aurora Cares, LLC

and Manhattan Nursing and Rehabilitation Center, leaving Manhattan as the sole defendant.

Docket No. 6. The Complaint alleges that the Manhattan nursing staff's negligence resulted in

injuries and the subsequent death of Plaintiff's mother, Mattie Moore, while she was in

Manhattan's care from October 27, 2009, to December 13, 2009. Docket No. 1-2, at 4.

Upon admission to Manhattan, eighty-year-old Moore suffered from a number of medical complications including incontinence, and a skin assessment by Manhattan described a bruise on her left buttock. Docket No. 29-1, at 2; Docket No. 14-1, at 1. To treat the incontinence, Manhattan received orders from Moore's physician, Dr. Robert Forbes, to turn and clean Moore every two hours. Docket No. 29-1, at 4.

On November 24, 2009, Manhattan's staff discovered a Stage II pressure wound on Moore's left gluteal (buttock). *Id*. at 6.[1] Staff notified Dr. Forbes, who provided treatment orders to Manhattan, which, in turn, followed those orders appropriately. Docket No. 29-1, at 6. On December 2, 2009, Manhattan documented that the wound progressed to Stage III, and the doctor implemented new treatment orders. *Id*. Even with the new treatment, the wound reached Stage IV by December 9, 2009, and, after being notified by Manhattan staff once again, Dr. Forbes gave new orders to combat the wound. *Id*.

On December 13, 2009, after being notified by the nursing staff of Moore's debilitating condition, Dr. Forbes ordered Moore to be sent to St. Dominic Hospital for treatment. *Id*. While at St. Dominic, Moore underwent surgical debridement of the wound, and was subsequently transferred to Hospice Ministries in Ridgeland, Mississippi, where she died a few weeks later on January 27, 2010. Her Certificate of Death identifies her cause of death as "Failure to Thrive." Docket No. 31-3.

When Plaintiff initiated this suit on November 16, 2011, the Complaint contained an extensive list of claims, *see* Docket No. 1-2, but this suit has now been significantly narrowed and only involves the treatment and care of the pressure wound. As Plaintiff states in her

---

[1] Plaintiff's expert explained that "Stage I and Stage II pressure ulcers are very common." Stage I is described as a "reddened area." Stage II can be an "open blister or a closed blister." Stage III pressure sores are described as "deeper," and they "get infected easily." Stage IV pressure ulcers are simply characterized as "incurable." *See* Docket No. 36-4, at 10.

Memorandum in Response to the Defendant's Motion for Summary Judgment, the only claim at issue is whether Manhattan and its nursing staff breached the applicable standard of care by (1) failing to examine the wound daily, (2) failing to timely treat the wound with topical antibiotics, resulting in severe infection, and (3) failing to refer/transfer Moore to specialized wound care in a timely manner. Docket No. 41, at 4. Plaintiff has designated Dr. Christopher Davey, an internal medicine physician, as her only expert to support her claims.  *Id*. at 3.[2]

## II.  Present Arguments

Manhattan's motion for summary judgment argues that Plaintiff's claims fail largely because Dr. Davey has not provided support for them; most notably, he has not identified how Manhattan has breached the nursing standard of care.  Docket No. 34, at 1, 5. Manhattan also contends that Dr. Davey's criticism is misdirected because wound treatment and referrals to specialists are duties of a treating physician. *Id*. at 5. Gay Ragland, one of Manhattan's nurses, supports its arguments through her expert testimony. *Id*. at 10.[3]

Plaintiff opposes summary judgment, arguing, "while the central issue of Plaintiff's allegations against Manhattan is that its nursing staff failed to properly treat and care for Moore's sacral wound in accordance with the applicable standard of care and that the staff's breach proximately caused her injuries and death, the proof offered by the Plaintiff through the opinions of Dr. Davey clearly establishes copious issues of material fact which preclude summary judgment." Docket No. 41, at 2.

---

[2]Through a separate motion, Defendant challenges Dr. Davey's qualifications to render an expert opinion on the issues before the Court.  *See* Docket No. 29. That motion, however, is rendered moot by this Order.

[3]In her deposition, Ragland stated that it is the nurses' job to (1) assess the patient's medical condition, (2) call the treating physician to properly apprise him or her of the patient's condition, and (3) carry out the treatment orders of the physician based on their assessment. *See* Docket No. 29-1, at 2.  Ragland's qualifications as an expert have not been challenged.

In rebuttal, Manhattan rejoins that Plaintiff's list of "copious" factual issues "grossly exaggerates the evidence developed in this case, as she includes multiple iterations of the same issue." Docket No. 44, at 1. Manhattan asserts that Dr. Davey has provided only three criticisms and those criticisms do not create a standard of care for Manhattan, nor do they provide any support for Plaintiff's contention that Manhattan breached its duty of care.

## II.  Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once the moving party has initially shown that there is an absence of evidence to support the non-moving party's cause, the non-movant must come forward with specific facts showing a genuine factual issue for trial." *TIG Ins. Co. v. Sedgwick James of Washington*, 276 F. 3d 754, 759 (5th Cir. 2002) (citations and quotation marks omitted).

The Court must "view the evidence and draw reasonable inferences in the light most favorable to the non-movant."  *Maddox v. Townsend and Sons, Inc.*, 639 F. 3d 214, 216 (5th Cir. 2011) (citation omitted). "Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *TIG Ins. Co.*, 276 F. 3d at 759 (citing *SEC v. Recile*, 10 F. 3d 1093, 1097 (5th Cir. 1993)).

Because this case is proceeding in diversity, the applicable substantive law is that of the forum state, Mississippi.  *Capital City Ins. Co. v. Hurst*, 632 F. 3d 898, 902 (5th Cir. 2011); *Smith v. Goodyear Tire & Rubber Co.*, 495 F. 3d 224, 228 (5th Cir. 2007). State law is

determined by looking to the decisions of the state's highest court. *St. Paul Fire and Marine Ins. Co. v. Convalescent Services, Inc.*, 193 F. 3d 340, 342 (5th Cir. 1999).

### IV. Discussion

In Mississippi, four elements are required to establish a prima facie case of medical negligence: the plaintiff "must prove that (1) the defendant had a duty to conform to a specific standard of conduct for the protection of others against an unreasonable risk of injury; (2) the defendant failed to conform to that required standard; (3) the defendant's breach of duty was a proximate cause of the plaintiff's injury, and (4) the plaintiff was injured as a result." *Vaughn v. Miss. Baptist Med. Ctr.*, 20 So. 3d 645, 650 (Miss. 2009) (quoting *McDonald v. Mem'l Hosp. at Gulfport*, 8 So. 3d 175, 180 (Miss. 2009)). Without expert testimony, the plaintiff cannot prove the elements of her claim. *Id.* (citations omitted). Reliable expert testimony is crucial:

> The expert must establish the requisite standard of care and that the defendant failed to conform to that standard. Liability turns on a failure to provide the required level of care. Therefore, *the success of a plaintiff in establishing a case of medical malpractice rests heavily on the shoulders of the plaintiff's selected medical expert. Not only must an expert identify and articulate the requisite standard that was complied with, the expert must also establish that the failure was the proximate cause, or proximate contributing cause, of the alleged injuries.*

*Saucier v. Hawkins*, 113 So. 3d 1277, 1282 (Miss. App. 2013) (citations and quotation marks omitted) (emphasis added).

Plaintiff has failed to establish a prima facie case of medical negligence. In particular, she has not proven the first element: whether Plaintiff's expert has identified and articulated an appropriate nursing standard that Manhattan's nursing staff breached. Dr. Davey contends that Manhattan breached the following duties: (1) the duty to timely treat the wound with topical antibiotics to prevent infection; (2) the duty to refer/transfer Moore for specialized wound care in

a timely manner; and (3) the duty to examine Moore's wound daily. Each duty will be addressed in turn.

### A. Failure to Treat Wound with Topical Antibiotics

Manhattan provided expert testimony through Nurse Ragland delineating the duty Manhattan and its staff owed Moore. Docket No. 29-1, at 2. According to Ragland, nurses are responsible for informing the treating physician of a patient's medical condition, and doctors are responsible for giving treatment orders for the nursing staff to follow. *Id*. During his deposition, Dr. Davey reinforces Ragland's opinion in the following exchange with counsel for the defendant:

> Q.    Okay. Assume for the purposes of the next question that Manhattan informed the doctor that this wound was increasing in size, and the doctor did not order some sort of antibiotic treatment for the wound. Would that be in your opinion a breach of the standard of care applicable to the doctor?

> A.    Yes. Now, if the doctor doesn't feel comfortable treating this wound, which is often the case because most doctors don't know much about wounds, then, of course, the doctor can always refer to a specialist or somebody who is comfortable treating wounds in the same way that if the patient had a heart problem he could refer it.  You know, doctors, like lawyers I suppose, can always refer if they are not comfortable treating a certain problem.

> Q.    So in this case, assuming that the nursing home kept Ms. Moore's treating physician aware of the fact that her wound was continuing to deteriorate, you would attribute its ultimate condition at least in part to a breach in the standard of care by the doctor?

> A.    Yes. Doctors are responsible for treatments of the patients in nursing home[s]. The nurses are, I suppose, [the] eyes and ears of the doctor. And the doctor, like me, relies on the nurses to tell them what's going on; which may or may not have happened here, I can't tell you.

*See* Docket No. 31-5, at 7-8. These statements reveal that Plaintiff's expert testimony and Manhattan's expert testimony are devoid of conflict. In fact, Dr. Davey's statements echo

6

Manhattan's defense, absolving Manhattan of any duty to treat Moore's wound with topical ointment unless the doctor authorized such treatment.

Manhattan claims that its nursing staff adequately performed its duty to keep the treating physician apprised of Moore's condition and to treat her wounds according to the physician's orders. Plaintiff has not controverted this evidence. Moreover, when given the opportunity to protest, Dr. Davey failed to do so:

> Q.    . . . *It is not your opinion that Manhattan failed to treat Ms. Moore's sacral ulcer in a manner consistent with the physician orders?*
>
> A.    *You are correct. . . .*

*See* Docket No. 31-5, at 5 (emphasis added). Other portions of Dr. Davey's testimony are equally telling:

> Q.    . . . Manhattan did have an appropriate infection control policy, did it not?
>
> A.    I have no idea.
>
> Q.    You have not looked at the policies and procedures?
>
> A.    No. I mean, I don't think I have.
>
> * * *
>
> Q.    . . . But, and I guess what my question is: *Don't you agree that Manhattan complied with the standard of care by notifying the treating physician that Ms. Moore's wound was increasing in size?*
>
> A.    *I don't have an opinion. I don't know. And I don't know if they made a sufficient notification or not. I don't have an opinion.*
>
> Q.    Okay. Is it a breach of the applicable standard of care for the *doctor* who was treating Ms. Moore not to order antibiotic cream?
>
> A.    I believe so, yes. Or not necessarily a cream. It could be an ointment or a powder or a lotion or solution, but some type of - - or even an antibiotic dressing.
>
> * * *

7

A.      . . . Now, in my opinion the critical error here was allowing it to become so badly infected, which it did. . . . But the larger criticism is, it shouldn't just be allowed to get worse and worse and then eventually the patient has a high fever and ends up in the hospital.

Q.      Okay. Is that a criticism of the doctor, the treating physician, of the nursing home, or both?

A.      Of course I am criticizing the nursing home. If the doctor was aware that all this was happening, then it would be a criticism of the doctor as well. *I don't know if the doctor was aware of all this happening. I think you would have to ask him.*

                                    * * *

Q.      *. . . Now, it is your opinion that Manhattan treated the pressure ulcer consistent with the standard of care when it was first discovered?*

A.      *Yes.*

Q.      And you believe that those treatments were compliant with the standard of care?

A.      Yes.

                                    * * *

Q.      Okay. And it's *not* your opinion that the sacral ulcer developed as a result of a breach in the *nursing* standard of care?

A.      That is correct. You can get these pressure ulcers very quickly.

Docket No. 31-5, at 4-8 and 10-11 (emphasis added).

Plaintiff has not provided any facts sufficient to defeat summary judgment on her claim that Manhattan failed to treat Moore's wound with topical antibiotics. Dr. Davey's criticisms—offered by Plaintiff in support of her claim—are directed toward the duty that Dr. Forbes owed Moore. It is the physician, Dr. Davey opines, who is responsible for authorizing treatment, which is consistent with Manhattan's view of the case.

Despite this agreement, Plaintiff wishes to hold Manhattan's nursing staff responsible for not prescribing certain medication to Moore. But Plaintiff has offered no evidence, through an

expert or otherwise, that Manhattan nurses had a non-delegable duty to treat Moore's wound beyond that which the doctor's orders required of them; nor has she proven or called into dispute whether the nurses had a duty to replace or supplement the doctor's orders. Plaintiff has not produced specific facts to place such claims at issue. Without presenting such evidence, Plaintiff has failed to articulate an applicable nursing standard of care from which Manhattan deviated.

### B.  Failure to Transfer/Refer to a Specialist in a Timely Manner

By Plaintiff's own admission, through the testimony of her expert, doctors are also responsible for the decision to transfer a patient. *See* Docket No. 31-5 at 8 ("[I]f the *doctor* doesn't feel comfortable treating this wound . . . then of course, the *doctor* can always refer to a specialist or [to] somebody who is comfortable treating wounds[.]") (emphasis added). Again, this is in line with the expert testimony provided by Manhattan. *See* Docket No. 31-1, at 5-6 (when *physicians* are aware of what is going on, they *have the duty to treat the patient*, order medicine *or make referrals*; *it is not the duty of the nurse*) (emphasis added). For the reasons mentioned above, the evidence does not support Plaintiff's proposition that Manhattan breached its duty by failing to transfer Moore to a specialist in a timely manner; that duty lies with the physician.

### C.  Failure to Check the Pressure Wound Daily

Plaintiff claims that the nurses had a duty to examine Moore's pressure wound daily. Accordingly, Plaintiff suggests that, but for Manhattan's failure to check the wound daily, the wound would not have worsened as it did because Moore would have received different treatment—such as a transferral to a wound care specialist or the use of topical antibiotics on her wound. *See* Docket 38-4, at 14-15. This assertion implies that Manhattan had a duty to provide a daily progress report to the treating physician based on the nurses' daily findings; without these

daily reports, Moore could not have received any new treatments.[4]

The effect of Plaintiff's argument translates into a standard that would establish a duty to timely communicate Moore's condition to the physician so that he may treat her properly. However, Plaintiff's expert has not testified or suggested that that the nurses' communication with the physician concerning Moore's pressure wound was not timely delivered or that it fell below the standard of care. In fact, as the Court has noted, Dr. Davey specifically testified that "[he did not] know if [the nurses] made a sufficient notification" to the doctors, and "[he did not] have an opinion" as to whether Manhattan complied with the standard of care by informing the physician.  Docket No. 31-5, at 6.

Moreover, assuming that Manhattan failed to timely communicate Moore's condition, Plaintiff has not produced any facts showing that Moore would have received different treatment from what was ordered. In other words, Plaintiff has failed to demonstrate that the failure to communicate the condition daily was the proximate cause of the injuries Moore sustained. Mississippi law dictates that "[c]ausation must be proven by expert medical testimony" in medical negligence cases.  *Univ. of Miss. Med. Ctr. v. Lanier*, 97 So. 3d 1197, 1201 (Miss. 2012).  Here, there is no such evidence.

Additionally, Plaintiff contends Manhattan breached other nursing standards of care not related to the treatment and care of wounds. Docket No. 1-2, at 9.[4] But merely making those assertions in her Complaint, particularly when Plaintiff's expert specifically limited his opinion to the treatment and care of wounds, is not sufficient. *See generally* Docket No. 31-5, at 4-8; Docket No. 38-2; Docket No. 38-4, at 11-14, 31-32, 36, and 40-42 (Dr. Davey denied having an

---

[4] As the Court explained above, the evidence indicates that treatment and referrals are authorized only by doctors.

[4]Plaintiff's Complaint listed approximately 23 breaches in the standard of care as a result of Manhattan's alleged negligence. *Id.*

opinion when asked questions concerning other issues and standards of care that Plaintiff has raised outside of those related to wound care). As such, these claims, unsupported by expert testimony, too must fail. *See Brown v. Baptist Mem'l Hosp. DeSoto, Inc.*, 806 So. 2d 1131, 1134 (Miss. 2002).

Plaintiff has failed to provide evidence showing that Manhattan did not conform to its required level of care. There is no evidence that creates a genuine issue of material fact as to whether the Plaintiff has established a standard of care which Manhattan breached or that the alleged breach was the proximate cause of Moore's injuries and subsequent death. Therefore, these issues must not be submitted to a jury.

## V. Conclusion

For the foregoing reasons, the defendant's motion for summary judgment is granted. The Defendant's Motion to Exclude Opinions of Christopher Davey [Docket No. 29] and the Defendant's Motion for Partial Summary Judgment as to Punitive Damages [Docket No. 31] are denied as moot. A Final Judgment in accordance with this Order will be entered on this day.

**SO ORDERED**, this the 9th day of September, 2013.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE

11